## Commonwealth v. Neri

594

*Rydesky, Malizia & Wolfe,* for appellant.

*John D. Gresimer,* for Commonwealth.

TRAMBLEY, March 8, 1956.—This case is before the court on an appeal by defendant, Armand A. Neri, from a judgment of guilty on a charge of wilfully and unlawfully throwing artificial light on a wild game animal, namely, a deer, while in possession of a bow and arrow in violation of section 704 of the game laws of the Commonwealth of Pennsylvania.

The Commonwealth alleges that on or about October 12, 1955, at about 6:30 p.m., defendant returned to his car which was parked about 200 feet from Ridge Road in Grove Township, Cameron County; that defendant entered his car and a dim light came on; that in a few seconds a flashlight came on and went out; that about five minutes later a dim light came on again and then the flashlight came on again and went out again; then about 15 minutes later automobile headlights came on and there were three deer standing in front of these lights about 25 feet away where there were about 10 apple trees; that a deputy game warden was nearby and when he saw the automobile headlights come on he walked behind the automobile, stood there and the flashlight came on again; then it went off and the deputy game warden turned his flashlight on whereupon defendant ducked down in his car; that the deputy game warden walked over to him and asked what he was doing; that defendant replied he had been sleeping; that about four feet from the left hand side of the car a bow lay on the

ground with an arrow attached to the string and that four other arrows were lying nearby; that defendant was wearing finger guards on his right hand; that there was another bow in the car which was also strung; it being on the right hand side of the car and that there was a quiver and some other arrows inside the car, on the back seat; that it was about a quarter after eight when he stopped there at the car and the weather was warm; that the deputy game warden thereupon arrested defendant and took him to the headquarters of the game protector of the district; that defendant said on the way to the game protector's headquarters that he would send the deputy game warden a present sometime if the deputy game warden would give him a break; that it was about 8:30 when the headlights went on and he saw the deer about 25 feet away; that defendant had no weapon with him with which to defend himself, except his bow and arrow; that defendant told the game protector that he had laid out his bow and arrows as he had to protect himself against beasts which might attack him and that the reason he flashed his car lights on and off intermittently was in order to see what time it was.

On his own behalf, defendant testified that he was hunting all day on October 12, 1955, and that he came to the point where his car was parked and at which he was arrested at about 3 o'clock that afternoon; that he saw no deer at all that day; that he returned to his car prior to 6:30 p.m. and he took his bow and the five arrows off his shoulder and laid them on the ground about seven feet from the driver's side of his car; that he was very tired; that when he opened his door the dome light lit and he flashed on his headlights in order to see what time it was by the clock in the car as he did not have or own a watch; that he only permitted the lights to be on long enough to see the time and then he got into the car and locked both doors,

put up the windows and laid back his head in order to rest; that while he was thus resting he was considering whether to go back to his camp or stay where he was and start hunting from there early in the morning; that the last time he looked at the clock it was five minutes after 8 and the next thing he knew was being startled by a light flashing in his face and someone asking him what he was doing there; that he told him he was sleeping; that he had a spare hunting bow which was strung in the car; that when the officer saw this bow he said "you are under arrest." That there were some boots on the front seat of the car; that he took these and went around to put them in the trunk so as to make room for the officer to sit in the car; that the officer followed him around and while standing there noticed the hunting bow and arrows lying on the ground; that there was nothing in the bow ready to shoot; that he never kept these arrows in the car because they were razor·sharp; that he kept them either in the trunk or out on the ground over night so that they would be ready the next morning when he was cooking breakfast if he should happen to be attacked by any animal; that there were no arrows in the car; that he did not try to hide from the deputy game warden; that, in addition to wanting to have his bow ready for protection, he had his bow strung because when a bow is strung and unstrung it often twists and is thereby rendered useless; that he had no firearms with which he could protect himself; that when he got to the car he took the arrows off and laid them on the ground because he was very tired and without having any thought in mind concerning them; that if he had decided to stay there over night the arrows would have remained on the ground but that if he had decided to return to his camp site he would have put them in the trunk of the car; that the reason he had finger guards on was that most archers wear

them constantly when they are awake so that they will become more or less pliable and used to the crease of your hand so that when the arrow is released it comes off more smoothly; that he did not have them on awaiting an opportunity to take a shot at any deer; that in addition to his headlights and dome light he had a flashlight and a hand light which he used around the camp; that he did not do any hunting on October 12, 1955, after 6:30 p.m., nor did he use any lights with the intention of locating a wild deer; that the length of his bow is sixty-four inches and it would fit in the trunk but with the other equipment he had in there it might become damaged; that he did not offer to send the deputy game warden a present.

Section 318 of article III of the Act of June 3, 1937, P. L. 1225, 34 PS §1311.318, as amended insofar as it is here pertinent, provides:

"For the purpose of this act (including section 704) the fact that any person shall be found in possession of a gun . . . or other device of any description usable for the purpose of killing or taking wild . . . animals . . . either in the field, in the forests, on the public highways . . . shall be considered 'prima facie evidence' that such person is hunting. . . . In all cases of arrest for violation of any of the provisions of this section . . . the affidavit of the person charged with such violation, and satisfactory proof of his innocence, shall rebut what is termed 'prima facie evidence'. . . ."

Section 704(a) of article VII of the above cited act, 34 PS §1311.704, as amended, insofar as it is here pertinent, provides:

"Except as otherwise provided, it is unlawful to hunt for, catch, take, kill, or wound, or attempt to catch, take, kill, or wound any wild . . . animal of any kind through the use of (a) . . . (b) . . . (c) . . . (d) . . . (e) or to make use of, or take advantage of,

any artificial light, battery, or other contrivance or device; . . . for the purpose of catching, taking, wounding, or killing wild . . . animals."

Section 704(*b*) of the same act, 34 PS §1311.704, insofar as it is here pertinent, provides:

"It is unlawful for any person . . . to throw or cast the rays of a spotlight, headlight, or other artificial light . . . in any field, woodland, or forest upon any big game while having in his . . . possession or under their control a firearm or other implement whereby any big game could be killed, even though such animal be not shot at, injured, or killed. The provisions of this paragraph shall not apply if it shall be proven that the headlights of a motor vehicle operated by the defendant . . . while traveling on a highway in the usual way, cast a light upon such animal on or adjacent to such highway, and there was no attempt or intent to locate such animal."

As we see it there are two questions presented to the court by this case:

1. Did defendant cast the headlights of his car or any other lights on big game within the meaning of the Act of June 3, 1937, P. L. 1225, as amended.

2. Did defendant have in his possession a gun, trap or other device of any description usable for the purpose of killing or taking wild animals as contemplated by the act.

Under section 318 of the act above cited, the prima facie case made out by the Commonwealth, by showing that a defendant is found in possession of a gun or other device usable for the purpose of killing or taking wild animals, et cetera, is rebutted if defendant makes affidavit that he was not hunting and offers satisfactory proof of his innocence. Defendant has made such affidavit in giving his testimony under oath: Commonwealth v. Davenport, 77 D. & C. 416. In order to complete the rebuttal of the prima facie

case made out by the Commonwealth by showing the above facts he must in addition give satisfactory proof of his innocence.

This being a criminal case the law applicable thereto must be strictly construed. As in all criminal cases, defendant is presumed to be innocent until his guilt has been established beyond a reasonable doubt. In proving the commission of a crime, it must be established that defendant intended to commit the crime charged. The intent, however, may be inferred from the acts of defendant if such acts clearly show the intent.

As to the first question, we find that defendant did not turn on his headlights for the purpose of locating wild animals. The evidence of the Commonwealth is insufficient to convince the court that he did. The evidence in regard to the flashlight and the dim light is quite hazy and as the headlights came on only once and defendant took no action which can be construed as hunting or attempting to hunt and defendant denied that he saw or even looked for any wild animal we must conclude that the Commonwealth has not met the burden imposed on it by law.

The question remains, "Did defendant have in his possession a weapon which could be used for killing wild animals when he was arrested?" There is considerable doubt as to whether he had such a weapon in the car. Both sides admit that there was a strung bow there but the testimony of the two witnesses for the Commonwealth is conflicting on the location of the arrows they allege were in the rear of the car and whether or not they were in the quiver. The court is at a loss to understand why these arrows were not confiscated and offered in evidence if in fact they were there. On the other hand, defendant denies that there were any arrows in the car and states that he and his attorney went to the car after the justice of the

peace hearing, the car not having been touched in the meantime, and they found no arrows there. We conclude, therefore, that defendant had no weapon inside the car with which he could have killed a wild animal as the bow without arrows was useless.

The question then arises, "did defendant have such possession of the bow and arrows on the ground outside the car as would constitute possession under the act of 1937, supra?".

It would appear to us that he did not. He denies that one of the arrows outside the car was on the string of the bow. According to Commonwealth's testimony, it was dark. Also from the testimony of the Commonwealth the headlights would not have shown on the bow and arrows, if they were located where the Commonwealth witness said they were. Defendant, therefore, would have had to get out of the car, find the bow and arrows in the dark, aim and release the bow in order to shoot a wild animal. It is incredible to the court that a man who had the hunting experience which the defendant here did would even hope to be able to shoot a wild animal under such conditions as the animal would have plenty of time to escape in the darkness before the defendant could shoot it. If there were arrows in the car, defendant could much more readily have been considered in possession of a weapon which could be used for killing a wild animal, but, in view of the contradictions existing in the testimony in regard to whether or not there were arrows inside the car we do not think that the Commonwealth has established that these arrows were there beyond a reasonable doubt.

The Commonwealth having failed to establish its case beyond a reasonable doubt, the appeal must be sustained.

The court, therefore, makes the following

*Order*

Now, March 8, 1956, for the foregoing reasons, the appeal of defendant is sustained, he is found not guilty, and the Pennsylvania Game Commission is ordered to pay the costs.